**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

SAMUEL HOWARD LOGAN, JR., )
)
        Plaintiff, )
)
v. ) Case No. CIV-13-144-KEW
)
HEALTHCARE INTERNATIONAL )
GLOBAL NETWORKS, LTD.; )
HEALTHCARE INTERNATIONAL )
GLOBAL NETWORKS, INC.; and )
NATIONAL LIFE INSURANCE )
COMPANY, )
)
        Defendants. )

## OPINION AND ORDER

     This matter comes before the Court on Defendants Healthcare International Global Networks, Ltd. and Healthcare International Global Networks, Inc.'s Motion to Dismiss Amended Complaint filed May 28, 2013 (Docket Entry No. 19). Plaintiff initiated this action on February 20, 2013 in the District Court in and for Pittsburg County, Oklahoma. The case was removed by Defendants to this Court on April 2, 2013. An Amended Complaint was subsequently filed on May 13, 2013.

     As alleged in the Amended Complaint, Plaintiff states he is a resident of McAlester, Oklahoma. While working in Nigeria, Plaintiff contends he sought health insurance coverage through an Internet search and discovered the website of Defendant HealthCare International (both moving Defendants collectively referred to herein as "HealthCare") with a posted address in London, England. Plaintiff asserts that on April 6, 2011, he completed an online application for health insurance and purchased a comprehensive

medical and hospitalization coverage for he and his family from HealthCare with an effective date of June 1, 2011. Plaintiff further alleges that on April 26, 2012, he became ill while on assignment in Nigeria and sought medical care. When he was unable to obtain medical care and a diagnosis of his condition in Nigeria, Plaintiff alleges he requested that Healthcare authorize his travel to Houston, Texas so that he could receive adequate medical care and treatment. Plaintiff contends Healthcare failed to timely authorize his travel to Houston. He ultimately paid for the airline tickets himself and traveled to Houston to receive medical care and treatment.

After arriving in Houston, Plaintiff was attended by a physician who immediately admitted him to Methodist West Hospital (the "Hospital"). Plaintiff obtained authorization from Healthcare for admission to the Hospital. Plaintiff was diagnosed with endocarditis which Plaintiff alleges was contracted from an infection after the insurance policy was issued. Plaintiff alleges his physicians determined that the infection had begun to destroy the mitral valve of his heart and that he would have to undergo surgery to save his life.

Plaintiff contends he and the Hospital sought authorization from Healthcare for the surgery. In response, on May 16, 2012, Olympus Managed Health Care, Inc. ("Olympus") informed the Hospital and Plaintiff's physician on behalf of Defendants, that the "diagnosis [of endocarditis] can either be attributed to either

2

[sic] congenital or a history of heart defects; this condition and the claims relating to this condition are not eligible for cover." Plaintiff alleges the determination was unsupported by any evidence and was contrary to the medical opinions and evidence provided to Healthcare by Plaintiff's physicians which indicated the condition was not congenital. Plaintiff states that he was informed of HealthCare's decision of no coverage while he was in the Intensive Care Unit of the Hospital awaiting surgery, which caused him "significant physical and emotional distress and harm."

On May 17, 2012, Plaintiff alleges Olympus informed HealthCare that Plaintiff intended to appeal the decision finding no coverage. Additionally, Olympus allegedly continued to provide information concerning Plaintiff's medical condition and history from the Hospital and Plaintiff's treating physicians. The Hospital allegedly requested that HealthCare provide information as to the physician who diagnosed and treated Plaintiff's prior condition but HealthCare declined the request.

Plaintiff ultimately received the surgery which replaced his destroyed mitral valve. Plaintiff asserts he suffers from the effects of the delay in the surgery and the denial of coverage.

Plaintiff filed this action alleging (1) unspecified Defendants breached the insurance contract in failing to provide coverage for his endocarditis; (2) Defendants breached the covenant of good faith and fair dealing under Oklahoma law in the manner in which they handled the insurance claim, made the coverage decision, failed to

conduct an adequate investigation, and adequately or properly considered the evidence; (3) HealthCare owed Plaintiff a duty of care to act reasonably and prudently in determining coverage and negligently failed to fulfill its duty in finding no coverage; and (4) Defendants' conduct warrants the imposition of punitive damages.

Through the pending motion to dismiss, HealthCare contends it is not Plaintiff's insurer and is not a party to the insurance contract. Further, HealthCare invokes the choice of law provision of the insurance contract which states that the law of Puerto Rico applies to any dispute over the contract. HealthCare asserts that, under Puerto Rican law, only the insurer can be held liable for insurance bad faith. HealthCare contends it is merely a third party administrator to the insurance policy issued by National Life Insurance Company and, as such, Plaintiff cannot pursue a claim against it for bad faith. HealthCare also contends that Puerto Rican law does not recognize a claim for punitive damages.

HealthCare brings this Motion under the auspices of Fed. R. Civ. P. 12(b)(6). Typically, to survive a Rule 12(b)(6) challenge, a complaint must meet the plausibility standard enunciated in United States Supreme Court cases of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Clearly, Bell Atlantic changed the legal analysis applicable to dismissal motions filed under Fed. R. Civ. P. 12(b)(6), creating a "refined standard" on such motions. Khalik v. United Airlines, 671 F.3d 1188, 1191 (10th Cir. 2012)(citation omitted). Bell Atlantic

4

stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) quoting Bell Atlantic, 550 U.S. at 570. The Supreme Court did not parse words when it stated in relation to the previous standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Bell Atlantic, 550 U.S. at 546.

The Tenth Circuit has interpreted the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). The Bell Atlantic case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ. P. 8(a)(2). Khalik, 671 F.3d at 1191. Rather, in Khalik, the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's "short and plain statement" requirement in the case of Erickson v. Pardus, 551 U.S. 89 (2007) wherein the Supreme Court found "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

<u>Id</u>. at 93.

Certainly, Plaintiff has stated sufficient factual allegations to plead plausible causes of action against HealthCare. Nothing in the adoption of the plausibility standard, however, suggests that a complaint cannot be dismissed "because it asserts a legal theory not cognizable as a matter of law . . . ." <u>Golan v. Ashcroft</u>, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004). The foundation of HealthCare's Motion begins and ends with the proposition that the laws of Puerto Rico apply to this dispute since the insurance contract specified such in a choice of law provision. The insurance contract, which is appended to the Amended Complaint and, therefore, can be considered in connection with the subject Motion, provides under the section entitled "LAW TO BE APPLIED" that "[t]his insurance shall be subject to the laws of Puerto Rico." While the parties both cite to the *Restatement (Second) of Conflict of Laws*, § 187 (1971) (the "Restatement") to support their positions, they differ in their interpretation of the relevant provisions.

The Restatement states at § 187 as follows:

§ 187 Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to

6

the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

REST 2d CONFL § 187

HealthCare contends that subsection (1) ends the analysis since the parties contracted for the laws of Puerto Rico to govern their agreement. However, Comment (b) of the Restatement explains certain limitations upon an express provision establishing the choice of law in stating:

> b. *Impropriety or mistake*. A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. Choice-of-law provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.

REST 2d CONFL § 187, Comment (b).

The circumstances surrounding the offering of the insurance contract, the negotiation of the provisions, the relative bargaining power of the parties, and any resulting injustice to one party or the other have not been presented to enable this Court to make the determination of whether the choice of law provision should be enforced. Regardless whether Plaintiff expressly alleged that the policy and included choice of law provision was procured by "misrepresentation, duress, or undue influence, or by mistake" in the Amended Complaint, a determination of the enforceability of the provision and the appropriate law to be applied is required for the adjudication of Plaintiff's claims in this or any other forum. Clearly, if the law of Oklahoma as the forum state is applied to this transaction, an express statement is provided under Oklahoma law which **could** result in a finding that the choice of law provision is void. *See*, Okla. stat. tit. 36 § 3617. Until such time as the parties have developed the factual record sufficiently for this Court to determine the validity of the choice of law provision, no finding will be made as to the law applicable to Plaintiff's claims. Although HealthCare makes the conclusory statement that England (as National Life's corporate home), Nigeria (where Plaintiff was working and living when he obtained the policy), and Texas (where Plaintiff received medical care and treatment) "have more significant contacts than Oklahoma," little factual evidence has been presented to establish the validity of these statements.

HealthCare was at least aware of Plaintiff's post office box in McAlester, Oklahoma as a "correspondence address" as that fact is set forth on the policy. Plaintiff's actual relationship to McAlester as a place of residency is, again, subject to factual development. The policy itself distinguishes between an insured's "Country of Residence" and "Home Country," but references the Application Form to make the distinction. Plaintiff's Application Form is not a part of the record accompanying the Amended Complaint.

Presuming that the laws of Puerto Rico do apply to this dispute, HealthCare next contends that it is not a proper defendant because Puerto Rico does not recognize bad faith liability against third party claim administrators citing In re San Juan Dupont Plaza Hotel Fire Litigation, 802 F.Supp. 624 (D. Puerto Rico 1992). This Court would note that this case does not stand for the proposition put forth by HealthCare but rather only states that "[t]he insurance contract is essentially a contract between the insurer and the insured(s) and the terms shall be defined in accordance with the general principles of contract law." Id. at 637. This pronouncement falls far short of HealthCare's urged position that Puerto Rico "does not extend liability arising on the policy beyond the insurer." Puerto Rico does recognize a claim for bad faith in connection with insurance claims. *See* Event Producers, Inc. v. Tyser & Co., 854 F.Supp. 35, 39 (D. P.R. 1993). HealthCare contends the First Circuit has precluded a claim for bad faith based in tort law citing Noble v. Corporacion Insular de Seguros, 738 F.2d 51 (1st

9

Cir. 1984). The First Circuit determined that the cause of action under the particular circumstances present in that case was based in contract rather than tort but did not expressly find that bad faith tort liability did not exist in Puerto Rico. Id. at 52-54.

Plaintiff has asserted liability against HealthCare and while the concept might not have yet been addressed by a court in Puerto Rico, it is not inconceivable that the theory would be adopted by a court in that jurisdiction given that several others have recognized the cause of action against third party administrators. *See e.g.* Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 797-98 (10th Cir. 1995); Robertson Stephens, Inc. v. Chubb Corp., 473 F.Supp.2d 265, 271 (D. R.I. 2007); Cary v. United of Omaha Life Ins. Co., 68 P.2d 462, 468 (Colo. 2003). Moreover, this Court is mindful of the admonition of the Tenth Circuit that a "'court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.' 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 341-43 (2d ed.1990)." Sheldon v. Vermonty, 2000 WL 1774038, 3-4 (10th Cir.)(unpublished opinion). At this stage of the proceedings, this Court will not dismiss a bad faith claim against HealthCare even if the laws of Puerto Rico apply in this action until the parties have developed further evidence of the relationship between HealthCare and Plaintiff.

As a final matter, HealthCare contends Puerto Rican law does not recognize the availability of punitive damages.  This appears to be the current state of the law.  *See* Noble v. Corporacin Insular De Seguros, *supra* at 54.  Should it be determined that the laws of Puerto Rico govern this action, punitive damages will not be available for recovery by Plaintiff.

IT IS THEREFORE ORDERED that Defendants Healthcare International Global Networks, Ltd. and Healthcare International Global Networks, Inc.'s Motion to Dismiss Amended Complaint filed May 28, 2013 (Docket Entry No. 19) is hereby **DENIED**.

IT IS SO ORDERED this 26th day of November, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE