**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

SAMUEL HOWARD LOGAN, JR.,     )
                              )
        Plaintiff,         )
                              )
v.                            )  Case No. CIV-13-144-KEW
                              )
HEALTHCARE INTERNATIONAL      )
GLOBAL NETWORKS, LTD.;        )
HEALTHCARE INTERNATIONAL      )
GLOBAL NETWORKS, INC.; and    )
NATIONAL LIFE INSURANCE       )
COMPANY,                      )
                              )
        Defendants.        )

**OPINION AND ORDER**

This matter comes before the Court on the Motion to Dismiss Claims Against Defendant Multinational Life Insurance Company (f/k/a National Life Insurance Company) or, in the Alternative, to Transfer This Action to the United States District Court for Puerto Rico (Docket Entry #38). Defendant Multinational Life Insurance Company ("MLIC")[1] contends this Court lacks both specific and general personal jurisdiction over it such that this action cannot be maintained in this District. Additionally, in a late developed issue, MLIC and the HealthCare Defendants argue in supplemental briefing that the insurance plan offered to Plaintiff Samuel Howard Logan, Jr. ("Logan") represents an Employee Retirement Income Security Act ("ERISA") qualified plan which would preempt the state

---

[1] Although MLIC is not named directly in this action as a successor to National Life Insurance Company, this Court will refer to this Defendant as MLIC to maintain continuity with the briefing.

court claims asserted by Logan in this case.

Logan initiated this action on February 20, 2013 in the District Court in and for Pittsburg County, Oklahoma. The case was removed by Defendants to this Court on April 2, 2013. An Amended Complaint was subsequently filed on May 13, 2013.

This Court previously related the facts as alleged in the Amended Complaint but will do so again for clarity. Logan states he is a resident of McAlester, Oklahoma. While working in Nigeria, Logan contends he sought health insurance coverage through an Internet search and discovered the website of Defendant HealthCare International ("HealthCare") with a posted address in London, England. Logan asserts that on April 6, 2011, he completed an online application for health insurance and purchased a comprehensive medical and hospitalization coverage for he and his family from HealthCare with an effective date of June 1, 2011. Logan further alleges that on April 26, 2012, he became ill while on assignment in Nigeria and sought medical care. When he was unable to obtain medical care and a diagnosis of his condition in Nigeria, Logan alleges he requested that Healthcare authorize his travel to Houston, Texas so that he could receive adequate medical care and treatment. Logan contends Healthcare failed to timely authorize his travel to Houston. He ultimately paid for the airline tickets himself and traveled to Houston to receive medical care and treatment.

After arriving in Houston, Logan was attended by a physician who immediately admitted him to Methodist West Hospital (the "Hospital"). Logan obtained authorization from Healthcare for admission to the Hospital. Logan was diagnosed with endocarditis which he alleges was contracted from an infection after the insurance policy was issued. Logan alleges his physicians determined that the infection had begun to destroy the mitral valve of his heart and that he would have to undergo surgery to save his life.

Logan contends he and the Hospital sought authorization from Healthcare for the surgery. In response, on May 16, 2012, Olympus Managed Health Care, Inc. ("Olympus") informed the Hospital and Logan's physician on behalf of Defendants, that the "diagnosis [of endocarditis] can either be attributed to either [sic] congenital or a history of heart defects; this condition and the claims relating to this condition are not eligible for cover." Logan alleges the determination was unsupported by any evidence and was contrary to the medical opinions and evidence provided to Healthcare by Logan's physicians which indicated the condition was not congenital. Logan states that he was informed of HealthCare's decision of no coverage while he was in the Intensive Care Unit of the Hospital awaiting surgery, which caused him "significant physical and emotional distress and harm."

On May 17, 2012, Logan alleges Olympus informed HealthCare

that Logan intended to appeal the decision finding no coverage. Additionally, Olympus allegedly continued to provide information concerning Logan's medical condition and history from the Hospital and Logan's treating physicians. The Hospital allegedly requested that HealthCare provide information as to the physician who diagnosed and treated Logan's prior condition but HealthCare declined the request.

Logan ultimately received the surgery which replaced his destroyed mitral valve. Logan asserts he suffers from the effects of the delay in the surgery and the denial of coverage.

Logan filed this action alleging (1) unspecified Defendants breached the insurance contract in failing to provide coverage for his endocarditis; (2) Defendants breached the covenant of good faith and fair dealing under Oklahoma law in the manner in which they handled the insurance claim, made the coverage decision, failed to conduct an adequate investigation, and adequately or properly considered the evidence; (3) HealthCare owed Plaintiff a duty of care to act reasonably and prudently in determining coverage and negligently failed to fulfill its duty in finding no coverage; and (4) Defendants' conduct warrants the imposition of punitive damages.

## Specific Personal Jurisdiction

MLIC files the subject request for dismissal contending this Court lacks *in personam* jurisdiction over it. Specifically, MLIC

asserts that it has not had the requisite continuous and systematic minimum contacts with the State of Oklahoma to establish both specific and general jurisdiction.

Initially, Logan bears the burden of establishing personal jurisdiction over Defendants. American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V., 710 F.2d 1449, 1454 (10th Cir. 1983). However, when a request for dismissal premised upon a lack of jurisdiction is decided on the basis of affidavits and other written material alone, Logan need only make a prima facie showing. Id.; Behagen v. Amateur Basketball Association of U.S.A., 744 F.2d 731, 733 (10th Cir. 1984).

The laws governing jurisdiction of the forum state determine the appropriate standard for establishing jurisdiction over a non-resident defendant in a case based in diversity so long as that exercise does not offend the due process clause of the Fourteenth Amendment of the United States Constitution. Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988). In Oklahoma, the long-arm jurisdictional statute provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and of the Constitution of the United States." Okla. Stat. tit. 12 § 2004(F). This language has been interpreted to authorize jurisdiction over non-resident defendants when such an exercise is consistent with the Due Process Clause of the United States Constitution. Williams

v. Bowman Livestock Equipment Co., 927 F.2d 1128, 1131 (10th Cir. 1991). Due process and the protections afforded under the Constitutions of both Oklahoma and the United States are satisfied only if the non-resident defendant has sufficient "minimum contacts" with the forum state and the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 339, 342, 90 L.Ed. 95, 102 (1945). This "minimum contact" standard requires that the court determine that the non-resident defendant "purposefully directed" his activities toward the forum state, thereby deriving a benefit. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). This determination concentrates on the "defendant's conduct and connection with the forum state as such that he should reasonably anticipate being haled into court there." Id. at 474 citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A non-resident defendant will not be brought into a jurisdiction solely as a result of "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." Id. at 475. This variety of personal jurisdiction is frequently referred to as "specific jurisdiction." Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 455-57 (10th Cir. 1996).

Logan states at multiple points in the extensive briefing done in this case that MLIC "allowed" or "authorized" HealthCare to

6

deliver an insurance policy in which MLIC was the insurer to Logan's address in Oklahoma, thereby purposefully directing activity to Oklahoma. Logan also cites to the fact that MLIC provided coverage to an Oklahoma resident when it could have declined to do so to avoid specific personal jurisdiction. Logan also asserts that the maintaining of a website which markets coverage to the world weighs in favor of finding the existence of specific *in personam* jurisdiction in Oklahoma. Logan also contends that an agency relationship between HealthCare and MLIC exists such that the actions taken by HealthCare to contact Logan are imputable to the insurer, MLIC.

MLIC provides the affidavit of its president, Carlos Iguina Oharriz to establish (1) MLIC possesses a single certificate of authority from Puerto Rico to transact life and health insurance and is only authorized to transact insurance in that jurisdiction; (2) MLIC never intended to do any insurance business in Oklahoma; (3) MLIC has never conducted any insurance business in Oklahoma; (4) MLIC has never even applied to do the business of insurance in Oklahoma; (5) MLIC does not and has never paid premium tax in Oklahoma; (6) MLIC does not and has never belonged to the Oklahoma Life and Health Insurance Guaranty Association or the Oklahoma Property and Casualty Insurance Guaranty Association; (7) MLIC has no authority and holds the licenses from the Oklahoma Department of Insurance and has never done so; (8) MLIC does not and has never

7

maintained a mailing address or telephone number listing in Oklahoma; (9) MLIC does not maintain bank accounts or other financial accounts in Oklahoma; (10) MLIC does not and has never hired any insurance agents in Oklahoma; (11) MLIC is not and has never been registered with the Secretary of State or the Oklahoma Insurance Department to business in Oklahoma; (12) MLIC does not have and has never had an agent for the service of process in Oklahoma; (13) MLIC has never targeted any direct mail advertising to residents of Oklahoma; (14) MLIC has never targeted any national advertisements to Oklahoma residents; and (15) MLIC has never targeted its website or online services to Oklahoma or its residents.

Additional evidence has also come to light which bears on the issue of the extent and quality of MLIC's contacts with Oklahoma. HealthCare produced Logan's application for insurance which he completed on the Internet. On that Individual Application Form, Logan set forth his "Principal Residence," which the form defines as "(where you are living or intend to live)" as Le Meridine Ibom Hotel Golf Resort in Uyo Akwa Ibom, Nigeria. Beside this reference is a place for "Other Residence" with a notation ("if applicable") wherein Logan completed PO Box 765, McAlester, Oklahoma. The form also contains the question, "Where would you like your policy documents sent?" in response to which Logan checked the box beside "Other residence." *HealthCare's Response to Nat'l Life Ins. Co.'s*

8

*Supplemental Brief in Support of Dismissal or Transfer of Venue*, Docket Entry No. 77, Exh. C., p. HCI 00013-00014.

Evidence also came to light that the payment of the premiums for the MLIC insurance policy were included in the offered benefits package to Logan by IMG/Jardin. Logan was retained by IMG/Jardin to act as IMG Consultant in a General Manager position for Le Meridien Ibom Hotel & Golf Resort Ibom Golf Course. *HealthCare's Supplemental Brief*, Docket Entry No. 68, Exh. 4, p. Logan 000073.

MLIC also contends it has developed information to indicate that Logan possibly sued the wrong defendant which it named the HealthCare Defendants in this action. MLIC identifies that appropriate party may be HCI UK. MLIC asserts this entity had no contractual relationship with MLIC so no agency relationship could exist to impute jurisdictional minimum contacts to MLIC.

Without doubt, the policy which was provided to Logan does not offer clarity as far as the entity from which it originates and the entity which is offering the insurance. The policy is entitled "HealthCare International Medical Insurance Policy." However, its terms provide in the finest of print that the Insurer is National Life Insurance Company. The policy administrator is identified as HealthCare International, UK Administration Office located in London, UK. The policy also provides for that it will be subject to the laws of Puerto Rico. Under the "Complaints Procedure" section of the policy, insureds are urged to contact the Compliance

Officer with HealthCare International in the event of a problem. Secondarily, insureds are referred to the Compliance Officer, c/o National Life Insurance Company, London, UK. Finally, unhappy insureds who remain unhappy after contacting the first two compliance officers are referred to the Financial Ombudsman Service, also in London, UK. *HealthCare's Response to Nation Life Ins. Co.'s Supplemental Brief in Support of Dismissal or Transfer of Venue*, Docket Entry No. 77, Exh. C, pp. HCI 00001-00002, HCI 00012. A "Member Certificate" issued specifically to Logan is entitled "HealthCare International Medical Expenses Plan." The Certificate notes Logan's mailing address as the post office box in McAlester, Oklahoma and extends coverage "Worldwide Including USA." Id. at Exh. C, second unnumbered page.

At the very essence of the facts alleged, Logan has failed to demonstrate sufficient minimum contacts to satisfy the requirements for specific personal jurisdiction. Logan's inclusion of a secondary mailing address on the application for insurance did little to clue MLIC or HealthCare into the fact that Logan was claiming to be an Oklahoma resident. Logan cites to the cases of McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957) and Willbros USA, Inc. v. Certain Underwriters at Lloyds of London, 220 P.3d 1166 (Okla. Civ. App. 2009) to support its assertion that the delivery of the policy and providing coverage to an Oklahoma resident was sufficient to establish specific personal jurisdiction.

In McGee, the United States Supreme Court found that the Due Process Clause was not offended when California was the situs where the contract was delivered, the premiums were mailed from there, and the insured was a resident of the state when he died. McGee, 355 U.S. at 223. Here, the contract was delivered to Oklahoma, the premiums were paid by the party for which Logan worked in Nigeria, and Logan was residing in Nigeria at the time both he applied for and obtained the insurance and when he attempted to claim its benefits. McGee is factually distinguishable from the case at bar.

In the Willbros case, the Oklahoma Court of Civil Appeals found sufficient minimum contacts to exercise personal jurisdiction over a foreign British defendant. The court found the foreign defendant (1) knowingly transacted business with an Oklahoma corporation; (2) representatives of the foreign defendant made several trips to Oklahoma over a five year period; and (3) the foreign defendant maintained a "stream of communication" with the Oklahoma business from London to Tulsa. Id. at 1173-74. MLIC's contacts with Oklahoma do not approach the Willbros level of interaction with the state. It is not even clear MLIC knew Logan was an Oklahoma resident at the time the policy was formulated and transacted. As discussed, the application for insurance certainly did not clarify Logan's residency. No other contact between MLIC and the State of Oklahoma has been proved through the evidence.

With regard to the use of the Internet, Logan has made no

11

showing that MLIC has sold policies to other residents of the State of Oklahoma. Indeed, Logan, at the time of his application, was admittedly a resident of Nigeria and it was not apparent he was a resident of Oklahoma. *See e.g.* Origins Natural Res. v. Kotler, 133 F.Supp.2d 1232, 1236-37 (D.N.M. 2001). It must also be noted that the evidence indicates MLIC does not maintain the website and its name does not appear on the site. MLIC's level of knowledge of the residency of the insurance applicants applying on HealthCare's website is in some doubt. Given the totality of the sparse contact with Oklahoma, this Court concludes that Logan has failed to demonstrate sufficient minimum contacts by MLIC for this Court to exercise specific personal jurisdiction over it.

The other type of personal jurisdiction is general jurisdiction. General jurisdiction requires a showing that MLIC has sufficient contacts with the State of Oklahoma to "constitute . . . continuous and systematic general business contacts." Kuenzle, 102 F.3d at 457 citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). In assessing contacts with a forum, courts have considered such factors as: (1) whether the defendant solicits business in the state through a local office or agents; (2) whether the defendant sends agents into the state on a regular basis to solicit business; (3) the extent to which the defendant holds itself out as doing business in the forum state, through advertisements, listings or bank accounts;

and (4) the volume of business conducted in the state by the defendant.  Id. citing Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996).

In short, the record is striking in the lack of evidence to support general jurisdiction.  Other than sending a policy to a post office box in Oklahoma which Logan designated as an "Other Residence," MLIC's contact with the State of Oklahoma has been non-existent.  Accordingly, this Court concludes general jurisdiction is also lacking over MLIC.

### Transfer of the Action to Puerto Rico

MLIC suggests that this action should be transferred to the United States District Court for Puerto Rico rather than dismissed as to MLIC.  Logan does not support a transfer and has not suggested that relief even in the alternative.  Recognizing Logan remains the master of his lawsuit, this Court will dismiss MLIC from this action due to the lack of *in personam* jurisdiction.

### Applicability of ERISA

Both HealthCare and MLIC urge this Court to determine that the plan at issue in this case represents an ERISA qualified plan.  In order to so qualify, Defendants must demonstrate that there exists (1) a plan, fund or program; (2) established or maintained; (3) by an employer; (4) for the purpose of providing benefits; (5) to participants or their beneficiaries.  Gaylor v. John Hancock Mutual Life Ins. Co., 112 F.3d 460, 464 (10th Cir. 1997).  The Tenth

Circuit has found the determination of the ERISA status of a policy is a mixed question of law and fact with the question involving conclusions drawn from undisputed facts making it primarily a question of law. Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 n.5 (10th Cir. 1992). Additionally, the Tenth Circuit has held that the determination of whether an individual is an employee is a question of fact. Roth v. American Hosp. Supply Corp., 965 F.2d 862, 865 (10th Cir. 1992). This Court must conclude that the multitude of facts in dispute in this case precludes a determination of whether ERISA governs the issues in this case at this dismissal stage of the proceedings. Should it become apparent after adequate discovery has occurred that the policy is governed by ERISA and Logan is an "employee" as that term is defined by the ERISA statutes, this Court is confident that HealthCare will file an appropriate dispositive motion. The facts are simply underdeveloped and require too many assumptions for this Court to make the determination of the applicability of ERISA at this point.

IT IS THEREFORE ORDERED that Motion to Dismiss Claims Against Defendant Multinational Life Insurance Company (f/k/a National Life Insurance Company) (Docket Entry #38) is hereby **GRANTED**. Accordingly, Defendant Multinational Life Insurance Company (f/k/a National Life Insurance Company) is hereby **DISMISSED** from this action due to a lack of *in personam* jurisdiction. Defendant's Alternative [Motion] to Transfer This Action to the United States

District Court for Puerto Rico contained in the same filing is hereby **DENIED**.

IT IS FURTHER ORDERED that the stay of discovery in this case is **VACATED**. A further telephonic Scheduling Conference with the remaining parties shall be conducted on **APRIL 30, 2014 AT 2:15 P.M.**

IT IS SO ORDERED this 31st day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE